NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190816-U

NO. 4-19-0816

FILED
November 15, 2021
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ALEJANDRO PULIDO-MORENO, | ) | Nos. 18DT534 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Pablo A. Eves, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not err in denying defendant's motion to suppress, finding
        probable cause to arrest defendant for driving under the influence of alcohol.

¶ 2         After the trial court denied defendant Alejandro Pulido-Moreno's motion to

suppress, the court found defendant guilty at a stipulated bench trial of driving under the influence

of alcohol (DUI) (625 ILCS 5/11-501(a)(1) (West 2018)). Upon the finding of guilt, the court

sentenced defendant to 24 months of court supervision pursuant to the sentencing recommendation

of the parties. Defendant asserts the court should not have found probable cause to arrest him for

DUI because (1) the field sobriety tests were unreliable because the arresting officer's instructions

"may" not have been given properly by the non-fluent Spanish speaking passenger who the officer

utilized to translate his instructions to defendant into English, (2) the horizontal gaze nystagmus

(HGN) test was administered incorrectly because of where the officer positioned defendant on the side of the interstate, and (3) the totality of the circumstances did not support probable cause.

¶ 3        We affirm the judgment of the circuit court.

¶ 4        I. BACKGROUND

¶ 5        In 2018, defendant was charged with two counts of DUI pursuant to section 11-501 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501 (a)(1), (a)(2) (West 2016)), arising out of a traffic stop on September 1, 2018. Defendant filed a motion to suppress evidence asking the trial court, *inter alia*, to suppress the results of the preliminary breath test (PBT) at the scene of the traffic stop. Defendant alleged he was not given the opportunity to refuse the PBT pursuant to section 11-501.5(a) of the Vehicle Code (625 ILCS 5/11-501.5(a) (West 2016)) because the arresting officer had one of defendant's passengers translate the instructions for the PBT into Spanish. Defendant alleged he did not speak English, and the passenger who translated was not a translator and not fluent in Spanish. After an evidentiary hearing, the court granted defendant's request as to the PBT, but found probable cause for the arrest.

¶ 6        We pause briefly to note the strange procedural posture presented to the trial court in that the motion to suppress sought only to "suppress the evidence illegally obtained as a product of the non-consensual breath samples taken absent probable cause" because a PBT result is already inadmissible by the State in a DUI prosecution and may only be utilized in the reasonable grounds determination. The trial court generously, with the apparent consent of the parties, took evidence and considered the whole of the probable cause for the arrest.

¶ 7        The hearing on the motion to suppress occurred over several days. At the commencement of the first day of the hearing, the trial court advised the parties that pursuant to

their agreement, the court had just finished viewing the first 20 minutes of the dash camera recording from the arresting officer's vehicle.

¶ 8 The video recording shows defendant's vehicle turning from one road onto the shoulder of another road, before moving out of the shoulder and into the roadway proper. Defendant shortly thereafter signals a left turn onto the interstate entrance ramp. Defendant's vehicle appears to be moving slowly before signaling to merge, and continues to appear to be moving at a slow rate of speed. Defendant's vehicle then begins weaving slowly within its lane, eventually touching the lane lines dividing the right lane from the left, and subsequently touching the fog line.

¶ 9 While defendant is still weaving slowly, the arresting officer radios his dispatch and activates his emergency lights. Defendant brakes and slowly pulls to the shoulder. After the arresting officer approaches defendant's vehicle and begins speaking with defendant, the front seat passenger offers to translate. Among other things, they advise they were coming from the Kappa Men's Club and that defendant had one drink.

¶ 10 The arresting officer then asks defendant to exit the vehicle, and defendant and his passenger do so. Defendant appears steady on his feet at this juncture and can be seen conversing with his passenger.

¶ 11 Defendant appears to understand when the arresting officer points to a spot and asks defendant to stand there with his feet together and arms at sides. As well, defendant appears to acknowledge the officer's instruction that the officer wants defendant to follow the officer's finger with his eyes and that defendant should not move his head. Defendant can be seen looking perpendicularly across the lanes of traffic from near the shoulder of the interstate while the officer is performing the HGN test. At the beginning of the test, one car does pass by, but there is a lengthy

gap during which the officer performs much of the testing. As they near the end of the test, a few other vehicles pass, each separated by several seconds.

¶ 12        Defendant then follows the arresting officer's instructions to move to a spot to begin the walk-and-turn field sobriety test (FST). Defendant appears somewhat unsteady on his feet and indicates he has something in his leg. The officer and passenger demonstrate the test, but defendant says he cannot complete the test.

¶ 13        The arresting officer proceeds to instruct the defendant how to perform the one leg stand FST. Defendant puts his raised foot down on one occasion, and has his hands clasped behind his back. During the test, defendant also hops on one foot.

¶ 14        After the last FST, defendant complies with the arresting officer's instructions to stand in front of the officer's vehicle. Defendant further appears willing to give a PBT sample as he approaches the device the officer is holding and seems to respond that he will give the sample. After several attempts, the defendant leans over to look at the screen on the arresting officer's PBT. At approximately 18 minutes into the video, and after the PBT, the officer places defendant under arrest.

¶ 15        Throughout the encounter, defendant appears cooperative, compliant, and polite.

¶ 16        Defendant testified at the hearing on the motion to suppress evidence that as to the HGN test, one leg stand FST, and PBT, he could not understand the passenger's translations but did not advise the arresting officer. Defendant claimed when asked to take the PBT, he shook his head "saying no." Defendant testified he had consumed two drinks, as opposed to one. As to the HGN test, defendant did not recall the officer asking him to stand in a certain place, but that he did see the officer point for the passenger's benefit and moved to that location. Defendant later indicated as to the one leg stand instructions, he "didn't pay much attention."

¶ 17    Ultimately, defendant testified he understood what he was supposed to do for the HGN test because the arresting officer demonstrated for him.

¶ 18    After hearing arguments from the parties, the trial court advised the court would look at the video again before returning. On return, the court commented there were differences between the defendant's testimony and what the video depicted. The court noted defendant committed several traffic offenses which provided a sufficient basis for the traffic stop. The court specifically found defendant not credible, and that defendant understood the HGN test procedures.

¶ 19    As to the PBT, the trial court found the arresting officer did not give the defendant the opportunity to refuse, such that the burden shifted to the State to show otherwise. Defendant reaffirmed his argument that both breath samples should be suppressed, and that absent the PBT, there was no probable cause for the arrest which rendered the breathalyzer unlawful. In response to several of the trial court's specific queries, including about the totality of the circumstances, defendant confirmed his sole argument on probable cause was that none existed without the PBT result. Throughout the argument, the State urged the totality of the circumstances supplied probable cause, and the court continued that matter to hear testimony from the arresting officer.

¶ 20    On a later date, the trial court reconvened to hear testimony from the arresting officer, Bryan McCall, a deputy with the McLean County Sheriff's Office. On September 1, 2018, McCall was working as a patrol deputy when he noticed the vehicle being driven by defendant at approximately 3:51 a.m. McCall testified he saw a vehicle turn westbound from one road to another and in doing so "turned completely onto the shoulder of the road." The vehicle "eventually" moved to the road from the shoulder without signaling, and McCall began following the car. After the vehicle turned onto the interstate, the car was travelling approximately 50 miles per hour where the speed zone was 70 miles per hour. McCall observed the car "weaving a little

bit from side to side in its lane, at one point completely crossing the line." McCall did not recall whether the car crossed the dashed line or the solid line. While following the vehicle, another car passed McCall on the left, and McCall believed defendant's vehicle frightened the passing car such that the latter went around both of them on the shoulder of the road.

¶ 21 Sometime after the other vehicle went around McCall and defendant, McCall activated his emergency lights and stopped defendant's car. When McCall first approached defendant, McCall "immediately" smelled "the odor of an unknown alcoholic beverage." In addition, McCall observed defendant had "bloodshot and glassy eyes." Upon speaking to defendant, defendant "had a blank stare on his face." The front seat passenger then advised defendant did not speak English well.

¶ 22 McCall testified defendant was able to produce his driver's license and insurance information when he asked, and defendant held up one finger when McCall asked if defendant had consumed any drink. When asked, defendant or the passenger advised they were coming from the Kappa Men's Club. McCall also noted when defendant spoke, the odor of alcohol was stronger.

¶ 23 McCall described that he instructed defendant as to the HGN test by speaking, pointing, and demonstrating. Defendant complied with some of the instructions prior to the passenger translating, and McCall believed defendant had some understanding of English. McCall observed all six clues when performing the HGN test and noted defendant swaying back and forth during the testing.

¶ 24 McCall similarly instructed defendant for the walk and turn, which defendant again appeared to understand from both translation and demonstration. Defendant advised he was unable to do this FST, so McCall proceeded to the one leg stand. The threshold number of clues for this

test is two, but McCall noted defendant only exhibited one as he hopped twice during the test. Although defendant swayed a bit, McCall did not count this as a clue.

¶ 25    McCall described the PBT process, and that it took defendant several times to provide a sample. As well, McCall observed defendant lean over to look at the PBT screen after the last attempt. Based on McCall's observations, McCall then arrested defendant for DUI.

¶ 26    At the conclusion of McCall's testimony, the trial court heard arguments from the parties on the motion to suppress evidence. The State discussed McCall's various observations, and proffered the totality of all of the circumstances. Defendant did not address the totality of the circumstances, and instead urged the court to consider defendant's performance on the FSTs and reject the PBT based on the absence of an opportunity to refuse the PBT. The court took the suppression issues under advisement, and later convened a hearing to announce its ruling on the motion to suppress evidence.

¶ 27    At the hearing, the trial court noted (1) it considered the video integral to its decision, (2) that the court weighed the credibility of the witnesses, and (3) that the language barrier did not bear specifically on its findings. The court repeated its finding there was "sufficient reasonable articulable suspicion for the traffic stop." As to probable cause for the arrest, the court referenced: (1) the video confirms the defendant turned onto the shoulder and failed to signal before returning to the roadway, (2) the video shows defendant weaving within his lane, (3) that the stop occurred at approximately 3:50 a.m., (4) McCall reported an odor of an alcoholic beverage from the car and later a strong odor from defendant, (5) McCall observed defendant's eyes were glassy and bloodshot, (6) defendant admitted to drinking "at least one drink" when asked, (7) McCall testified defendant swayed during the HGN test and swayed and hopped for the one leg stand FST, and (8) defendant exhibited six of six clues on the HGN test.

¶ 28 The trial court granted the motion to suppress as to the PBT because defendant did not have an opportunity to refuse the PBT. However, based on all the other "facts and circumstances," the court found the totality of the circumstances constituted probable cause to support defendant's arrest for DUI. Therefore, the court denied the motion to suppress evidence, other than the PBT result.

¶ 29 Subsequently, the trial court held a stipulated bench trial wherein the parties stipulated that defendant drove with a blood alcohol content over 0.08%. Immediately prior to the trial, the court granted the State's motion to dismiss the other DUI count. The court also approved the joint sentencing recommendation of the parties providing for 24 months of court supervision, and sentenced defendant to that agreed term.

¶ 30 At the conclusion of the stipulated bench trial, defendant asked the circuit clerk to file the notice of appeal. Defendant did not therefore file a post-trial motion.

¶ 31                                II. ANALYSIS

¶ 32                            A. Standard of Review

¶ 33 We give deference to a trial court's factual findings on review of a ruling on a motion to suppress, and reverse those findings only when they are against the manifest weight of the evidence. *People v. Cregan*, 2014 IL 113600, ¶ 22. Our review is *de novo* of the court's rulings on legal issues, and ultimately whether suppression is appropriate. *Id.*

¶ 34 The defendant bears the initial and ultimate burden on a motion to suppress evidence. Once a defendant makes a *prima facie* case of illegal acquisition of the evidence, the burden shifts to the State to rebut that *prima facie* showing. *Id*. ¶ 23.

¶ 35            B. Defendant Did Not Forfeit His Challenge to the Ruling

                        on the Motion to Suppress Evidence

¶ 36    Defendant acknowledges he did not raise the trial court's ruling on the motion to suppress evidence in a post-trial motion. Generally, a party must raise an issue at trial and in a post-trial motion to preserve the issue for appeal. *Id.* ¶ 15. There are three recognized exceptions, including constitutional issues the party properly raised at trial and which the defendant could raise in a post-conviction petition. *Id.* ¶ 16. Judicial economy favors addressing such issues on direct appeal instead of in a post-conviction proceeding. *Id.* ¶ 18. Because a motion to suppress raises an issue based on the constitutional right to be free from unreasonable searches and seizures, this exception to the forfeiture rule applies to such cases. *Id.* ¶ 20. Thus, defendant's failure to file a post-trial motion raising the trial court's ruling on his motion to suppress evidence does not result in a forfeiture of his claim on appeal.

¶ 37        C. Defendant Has Forfeited Any Challenge to the HGN Test

¶ 38    Defendant argues McCall performed the HGN test improperly by placing defendant on the side of the interstate facing perpendicularly to the traffic flow. The video shows occasional traffic given it was nearly four in the morning, but also significant gaps in traffic such that McCall could test defendant without traffic. Defendant did not raise an issue regarding the HGN test in his motion to suppress evidence, during the hearing on the motion, or in a post-trial motion.

¶ 39    Raising an issue at trial or in a post-trial motion is generally required to preserve error for review. *People v. Chapman*, 194 Ill. 2d 186, 225 (2000). Failing to so raise such an error is a procedural default, but some errors can be reviewed if we determine plain error has occurred. *Id.* at 226. The plain error doctrine "allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances." *People v. Herron*, 215 Ill. 2d 167, 178 (2005). In short, the "doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error,

or (2) the error is serious, regardless of the closeness of the evidence." *Id.* at 186-87. Though the doctrine is "nonconstitutional," it "has roots in the same soil as due process." *Id.* at 177. "Fairness, in short, is the foundation of our plain-error jurisprudence." *Id.* Its "purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process." *Id.* Defendant asserts error under the first prong of the doctrine.

¶ 40     However, before we determine if the plain error exception to forfeiture applies, we first determine if any "clear or obvious error occurred" at all. *People v. Birge,* 2021 IL 125644, ¶ 24. If we find no clear or obvious error, there is no plain error basis to avoid procedural default. *Id.* at ¶ 42.

¶ 41     McCall testified on direct examination he was trained to perform the FSTs pursuant to the National Highway and Traffic Safety Administration (NHTSA) standards, was qualified to perform FSTs pursuant to those standards, and that he performed the HGN test on defendant as he had been trained to do. On cross-examination, McCall testified the HGN test "generally" indicated alcohol consumption. Defendant did not challenge McCall's statement he performed in accordance with the appropriate standards, did not otherwise introduce any evidence regarding what the standards provide for as to placement of the one being tested, and specifically asked McCall no questions about how he positioned defendant for the HGN test. In addition, defendant did not make a foundation objection to the admission of the HGN test.

¶ 42     Given (1) McCall testified the HGN test only generally indicates alcohol consumption and (2) defendant asked McCall questions about the FSTs but none about the positioning of defendant in compliance with the standards, the trial court committed no error considering the HGN test. *People v. Korzenewski*, 2012 IL App (4th) 101026, ¶¶ 15, 22-23.

Finding no clear or obvious error, we find no plain error basis to permit defendant to avoid forfeiture of the HGN testing issue he now wishes to raise.

¶ 43                    D. The Non-Certified Translation Is Not Directly Relevant

to the Existence of Probable Cause

¶ 44         Defendant claims the FST results were not reliable because McCall permitted defendant's passenger to translate the instructions. Defendant urges the instructions "may" not have been given properly because the passenger who translated had difficulty translating some of the words. Defendant proffers it is "unclear" whether the passenger accurately translated. If the instructions were incorrect, defendant claims his failure could have been no fault of his own.

¶ 45         This claim is easily disposed of. First, defendant generally complied with McCall's non-verbal and verbal instructions and demonstrations. Second, defendant testified he understood the HGN test's instructions, and the video supports this. Third, the observations supporting probable cause, as discussed further below, are not observations based on instructions but are rather general observations of defendant and his driving. Fourth, defendant could have called his passenger to testify at the suppression hearing had he desired to prove up claims the passenger was not an effective translator.

¶ 46         Therefore, the trial court's rejection a language barrier contributed to defendant's FST failure and probable cause finding is well-placed and not against the manifest weight of the evidence. We find no such error as defendant alleges.

¶ 47                    E. The Totality of the Circumstances Support Probable Cause

And Denial of the Motion to Suppress Evidence

¶ 48         Defendant asserts the totality of the facts do not support a finding of probable cause to have arrested him for DUI. Defendant proffers (1) he pulled back into the lane from the shoulder,

(2) only weaved within his lane, (3) his speech was not slow or slurred, and (4) there was only one clue noted on the one leg stand FST.

¶ 49　　　　Probable cause in DUI matters exists when the totality of the circumstances known by the arresting officer at the time of the arrest could lead a "reasonably cautious person" to believe the defendant is mentally and/or physically impaired and that impairment affects the arrestee's ability to operate a vehicle safely. *People v. Williams*, 2018 IL App (2d) 160683, ¶ 13. Such cause is often established by the arresting officer's observations of (1) the odor of alcohol about the arrestee, (2) the arrestee's slurred speech, *or* (3) the arrestee's red or glassy eyes. *Id*. ¶ 14. Commonly the arresting officer's observations of the foregoing are coupled with "other observations apparent to the officer or inferred" from the arrestee's poor driving or commission of traffic violations. *Id*.

¶ 50　　　　The trial court's explicit findings underpinning the probable cause determination include (1) the defendant's initial lane violations involving driving on the shoulder that caught McCall's attention, (2) that the encounter was shortly before four in the morning, (3) defendant's slow weaving within his lane, (4) the odor of an alcoholic beverage emanating from defendant's vehicle and later a strong odor about defendant, (5) defendant's bloodshot and glassy eyes, (6) defendant's admission he had at least one drink, (7) McCall's testimony defendant swayed during the HGN test and swayed and hopped during the one leg stand, and (8) the six clues from the HGN test.

¶ 51　　　　In addition to the trial court's explicit findings, McCall testified (1) defendant was travelling approximately 50 miles per hour in a 70 mile per hour zone, (2) when McCall first began speaking to defendant he exhibited a blank stare, and (3) either defendant or the passenger advised

they were coming from the Kappa Men's Club. Finally, video shows defendant swaying during the walk-and-turn portion of the testing.

¶ 52 Like *Williams*, defendant's arrest was not solely based on the odor of alcohol about defendant and his bloodshot glassy eyes. *Id.* ¶ 15. Driving on the shoulder, failing to signal, weaving, and slow speed on the interstate all demonstrate defendant was not able to operate the vehicle safely. *Id.* That defendant swayed during several portions of the FSTs also supports probable cause for DUI. *Id.* ¶ 17.

¶ 53 Given the totality of the circumstances existing at the time of the arrest, the trial court's factual conclusions are not against the manifest weight of the evidence. We conclude there was probable cause to arrest defendant for DUI, and the court did not err coming to the same conclusion. Given that conclusion, defendant's argument the court should have suppressed the evidence (other than the PBT) is without merit. *Id.*

¶ 54                                        III. CONCLUSION

¶ 55 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 56 Affirmed.